WESTERN WATER, LIGHT AND TRACTION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91272.   Promulgated November 18, 1938.

*W. F. Mehrlich, Esq.*, and *M. J. Sporrer, Esq.*, for the petitioner.
*C. R. Marshall, Esq.*, for the respondent.

OPINION.

SMITH: This proceeding is for the redetermination of deficiencies in petitioner's income tax for 1934 and 1935 in the respective amounts of $655.46 and $938.33. The sole issue presented is whether the petitioner and its wholly owned subsidiary, the Iowa Terminal Co., were affiliated during the taxable years 1934 and 1935 and privileged to file consolidated returns for those years.

The parties have filed a written stipulation of facts which, in so far as material to our consideration of the issue presented, are substantially as follows:

The petitioner is a corporation, organized under the laws of Maine, with its principal office at Chicago, Illinois. During 1934 and 1935, it was a holding company, deriving all of its income from inter-

est on bonds, mortgages, notes, and other properties, and from dividends on stocks of domestic corporations.

During 1934 and 1935 the petitioner owned all of the outstanding capital stock of the Iowa Terminal Co., an Iowa corporation, hereinafter called the Terminal Co., consisting of 5,000 shares of common stock of a par value of $100 per share.

Also, during 1934 and 1935, the petitioner held outstanding 6 percent first mortgage notes of the Terminal Co. in the face amount of $277,651.21 which had matured on October 1, 1928. This indebtedness represented moneys advanced to the Terminal Co. by the petitioner in prior years.

The Terminal Co. is the owner of certain terminal facilities located at Des Moines, Iowa, consisting of roads, buildings, tracks, and other equipment which during 1934 and 1935 were leased to the Des Moines & Central Iowa Railroad Co. for an annual rental of $18,000. The only activity of the Terminal Co. during the years 1934 and 1935 was the receiving of rents for its terminal properties, and its entire income consisted of rent received from its leased properties.

Balance sheets of the petitioner at December 31, 1933, 1934, and 1935, showing the principal assets, are set forth in the stipulation of facts as follows:

| | Book value | | |
| --- | --- | --- | --- |
| | 12/31/33 | 12/31/34 | 12/31/35 |
| **ASSETS** | | | |
| Cash | $25, 687. 63 | $42, 065. 96 | $49, 909. 32 |
| *Stocks:* | | | |
| Iowa Electric Light & Power Co.—9,195 shares (no par) | 91, 950. 00 | 91, 950. 00 | 91, 950. 00 |
| Pref. 1,103⁴⁄₁₀ shares ($100 par) Class A Com. 8,333⅓ shares, (no par) Com. 14,286 shares [*sic*] | 250, 000. 00 | 250, 000. 00 | 250, 000. 00 |
| Auburn & Syracuse Electric Railroad Co. Com. 496 shares. | | | |
| Deer Lodge Farms Co. Capital 436 shares [*sic*] | 23, 370. 93 | 23, 370. 93 | 23, 370. 93 |
| Iowa Terminal Co. Capital 5,000 shares [*sic*] | 450, 000. 00 | 450, 000. 00 | 450, 000. 00 |
| Central Public Utility Corp. Voting Trust Certificates for Com. stock 5994–3125/5,000 | | | |
| Others | 270. 00 | | |
| *Mining rights:* | | | |
| Orestimba Rancho | 1. 00 | 1. 00 | 1. 00 |
| *Bonds:* | | | |
| Des Moines & Central Iowa R. R. first 7½s matured 4/1/31, face value $112,500 (principal defaulted and no interest paid since 10/1/26) | 48, 600. 00 | 48, 600. 00 | 48, 600. 00 |
| Central Public Utility Corp. 20-yr. income 5½s, due 8/1/52, face value $299,731.25 | 299, 731. 25 | 299, 731. 25 | 299, 731. 25 |
| *Notes receivable:* | | | |
| Deer Lodge Farms Co. 6%, due 1/1/37 | 7, 164. 27 | 7, 164. 27 | 7, 164. 27 |
| John T. Beasley (4%, due 7/29/35) | | | 3, 111. 59 |
| Iowa Terminal Co. real estate mortgage 6%, matured 10/1/28 | 277, 651. 21 | 277, 651. 21 | 277, 651. 21 |
| *Total assets* | 1, 475, 426. 29 | 1, 490, 534. 62 | 1, 501, 492. 57 |
| **LIABILITIES** | | | |
| Notes Payable | 91, 950. 00 | 91, 950. 00 | 91, 950. 00 |
| Capital Stock | 10, 000. 00 | 10, 000. 00 | 10, 000. 00 |
| Paid-in Surplus | 1, 346, 434. 00 | 1, 346, 434. 00 | 1, 346, 434. 00 |
| Earned Surplus | 27, 042. 29 | 42, 150. 62 | 53, 108. 57 |
| *Total liabilities* | 1, 475, 426. 29 | 1, 490, 534. 62 | 1, 501, 492. 57 |

The Iowa Electric Light & Power Co. is an operating gas and electric utility company. It operates about 28 miles of electric railway between Cedar Rapids and Iowa City and carries both freight and passengers. It supplies gas and electricity to a number of areas in the vicinity of Cedar Rapids, Iowa. As of December 31, 1935, it served approximately 50,000 electricity consumers and over 10,000 gas consumers. Less than 10 percent of the company's income is derived from transportation. The preferred stock of the company has preference both as to assets and dividends.

The stipulated facts contain no information as to the character of business of the Deer Lodge Farms Co.

The Des Moines & Central Iowa Railroad Co., which, as stated above, was the lessee of the Terminal Co.'s terminal facilities in 1934 and 1935, operates about 180 miles of interurban railroad out of Des Moines. Its bonds, which the petitioner owned in 1934 and 1935, had matured in 1931 and were in default as to both principal and interest, no interest having been paid since 1926.

The Central Public Utility Corporation, a Delaware corporation, is the main holding company for a system of public utility companies controlled by Consolidated Electric & Gas Co., all of whose common stock it owns. The company is also engaged in the distribution of electricity.

The gross income of the petitioner and of the Terminal Co. for 1934 and 1935, determined on a cash receipts and disbursements basis, was as follows:

*Western Water, Light & Traction Co.*

| Gross income | 1934 | 1935 |
|---|---|---|
| Interest received on— | | |
| Note of Iowa Terminal Co. | $16,659.08 | $14,659.08 |
| Other notes | | 429.86 |
| Dividends on preferred stock of Iowa Electric Light & Power Co. | 1,930.96 | 2,896.44 |
| Total | 18,590.04 | 17,985.38 |

*Iowa Terminal Co.*

| Gross income | 1934 | 1935 |
|---|---|---|
| Rent—Des Moines & Central Iowa Railroad Co. under lease | $18,000.00 | $15,000.00 |

Petitioner's total net income was $15,499.99 in 1934 and $13,468.10 in 1935, while the Terminal Co. had net losses of $6,129.88 in 1934 and $7,667.93 in 1935.

The petitioner filed consolidated income and excess profits tax returns for 1934 and 1935 for itself and the Terminal Co. and in its returns the petitioner's net income was reduced by the net losses of the Terminal Co. The respondent in his audit of the returns has determined that the petitioner and the Terminal Co. were not affiliated within the meaning of section 141 (d) of the Revenue Act of 1934

during the taxable years 1934 and 1935 and were not entitled to file consolidated returns for those years. Whether these companies were affiliated is the only question in issue in this proceeding.

Section 141 (d) of the Revenue Act of 1934 is as follows:

(d) DEFINITION OF "AFFILIATED GROUP".—As used in this section an "affiliated group" means one or more chains of corporations connected through stock ownership with a common parent corporation if—

(1) At least 95 per centum of the stock of each of the corporations (except the common parent corporation) is owned directly by one or more of the other corporations; and

(2) The common parent corporation owns directly at least 95 per centum of the stock of at least one of the other corporations; and

(3) Each of the corporations is either (A) a corporation whose principal business is that of a common carrier by railroad or (B) a corporation the assets of which consist principally of stock in such corporations and which does not itself operate a business other than that of a common carrier by railroad. For the purpose of determining whether the principal business of a corporation is that of a common carrier by railroad, if a common carrier by railroad has leased its railroad properties and such properties are operated as such by another common carrier by railroad, the business of receiving rents for such railroad properties shall be considered as the business of a common carrier by railroad.

As used in this subsection (except in paragraph (3) the term "stock" does not include nonvoting stock which is limited and preferred as to dividends.

Since the petitioner owned all of the common stock of the Terminal Co., the requirements of subsections (1) and (2) of section 141 (d) above are satisfied. In addition to those requirements, however, each of the companies claiming affiliation must be either (A) a corporation whose principal business is that of a common carrier by railroad; or (B) a corporation the assets of which consist principally of stock in such corporations. The respondent contends that the conditions prescribed in neither (A) nor (B) have been met. Assuming that the Terminal Co. fulfills the conditions prescribed in (A), it is clear that the petitioner does not, since, as it is stipulated, the petitioner in 1934 and 1935 was a holding company, deriving all of its income from interest on bonds, mortgages, notes, and other properties, and from dividends on stocks of domestic corporations. It remains to be considered whether the petitioner fulfills the conditions in (B).

As shown by the balance sheets set forth above, the assets of the petitioner at the close of each of the years 1933, 1934, and 1935 totaled $1,475,426.29, $1,490,534.62, and $1,501,492.57, respectively. The petitioner's investment in the capital stock of the Terminal Co., as shown by its books of account, was only $450,000. Apparently the stock was worth very little, if anything, during the taxable years. The requirement of section 141 (d) (3) (B) is "a corporation the assets of which consist principally of stock in such corporations and which does not itself operate a business other than that of a common carrier

by railroad." The phrase "such corporations" refers to those corporations specified in (A), that is, those whose principal business is that of a common carrier by railroad. The other investments of the petitioner, besides its investment in the capital stock of the Terminal Co., do not meet the requirement of (B). The evidence is that only $450,000 of petitioner's total assets of approximately $1,500,000 consisted principally of stock in "such corporations."

The petitioner's balance sheets for 1934 and 1935 show that one of its principal assets was "notes receivable" of the Terminal Co. secured by a 6 percent real estate mortgage of a book value of $277,651.21. Petitioner's income statements for 1934 and 1935 show that the interest which it received from the Terminal Co. on these notes, of $16,659.08 in 1934 and $14,659.08 in 1935, comprised about 80 percent of its total income. It would appear that the petitioner's principal income-producing asset during the years 1934 and 1935 was its investment in the mortgage notes of the Terminal Co. The mortgage notes of the Terminal Co. were not the same or the equivalent of stock in that company, within the contemplation of the statute. They represented an interest entirely separate and different from the stock.

We think it plain that during the taxable years the petitioner's assets did not consist principally of shares of stock of corporations whose principal business was that of common carrier by railroad.

It is observed, too, that the petitioner was the owner in 1934 and 1935 of common and preferred stock, or both, of other corporations, none of which was of the class of corporations prescribed in subdivision (d) (3) above.

The respondent is sustained in his determination that the petitioner and the Terminal Co. were not affiliated in 1934 and 1935 and are not entitled to file consolidated returns for those years.

*Judgment will be entered for the respondent.*